PD-0838-15

PD-0838-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 7/6/2015 4:08:04 PM
Accepted 7/7/2015 4:13:42 PM
ABEL ACOSTA
CLERK

**No.**
In the
**COURT OF CRIMINAL APPEALS**
For the
**STATE OF TEXAS**

---

**THE STATE OF TEXAS**
*Petitioner*
*v*
**ALLEN TERCERO**
*Respondent*

---

**On State's Petition for Discretionary Review from the First Court of Appeals,
Appeal Number 01-14-00120-CR
On Appeal from the 434th District Court of Fort Bend County, Texas, Cause
Number 10-DCR-056111**

---

**STATE'S PETITION FOR DISCRETIONARY REVIEW**

*Counsel for Petitioner*

**JOHN F. HEALEY**
DISTRICT ATTORNEY
FORT BEND COUNTY, TEXAS

**JASON BENNYHOFF**
ASSISTANT DISTRICT ATTORNEY
FORT BEND COUNTY, TEXAS

301 Jackson Street
Richmond, Texas 77469
281-341-4460 (Tel.)
281-238-3340 (Fax)
jason.bennyhoff@fortbendcountytx.gov

FILED IN
COURT OF CRIMINAL APPEALS

July 7, 2015

ABEL ACOSTA, CLERK

# IDENTIFICATION OF PARTIES

Pursuant to Tex. R. App. P. 38.1, a complete list of the names of all interested parties is provided below so the members of this Honorable Court may at once determine whether they are disqualified to serve or should recuse themselves from participating in the decision of the case.

**Petitioner:**
**THE STATE OF TEXAS**

**Respondent:**
**ALLEN TERCERO**

**Counsel for Respondent:**
**LESLIE LEGRAND**
**(AT TRIAL AND ON APPEAL)**

**Address(es):**
**2000 Smith Street**
**Houston, Texas 77002**

**Counsel for Petitioner/State:**
**JOHN F. HEALEY, JR.**
**District Attorney of Fort Bend County, Texas**
**Fort Bend County District Attorney's Office**

**Address(es):**
**301 Jackson Street, Rm 101**
**Richmond, Texas 77469**

**ABDUL FARUKHI**
**Assistant District Attorneys, Ft. Bend County, Tx.**
**(AT TRIAL)**

**JASON BENNYHOFF**
**Assistant District Attorney, Ft. Bend County, Tx.**
**(ON APPEAL)**

**IDENTIFICATION OF PARTIES** (cont.)

**JOHN J. HARRITY, III**
**Assistant District Attorney, Ft. Bend County, Tx.**

**Trial Judge:**
**The Hon. James Shoemake**
**434th District Court**
**Fort Bend County, Texas**

# TABLE OF CONTENTS

**SECTION**                                                                **PAGE**

INDEX OF AUTHORITIES..................................................................................1

STATEMENT REGARDING ORAL ARGUMENT .............................................2

STATEMENT OF THE CASE.........................................................................3

STATEMENT OF PROCEDURAL HISTORY....................................................4

GROUND FOR REVIEW ...............................................................................5

      Did the Fourteenth Court of Appeals err in holding that there is no way
      in which the warrantless blood draw taken in this case was reasonable
      under the Fourth Amendment to the United States Constitution, in
      reliance on this Court's opinion in *State v. Villarreal*? ...................................5

ARGUMENT AND AUTHORITIES.................................................................5

PRAYER FOR RELIEF .................................................................................8

CERTIFICATE OF SERVICE ........................................................................9

APPENDIX ...............................................................................................10

# INDEX OF AUTHORITIES

**CASES**                                                                          **PAGE**

*Beeman v. State*, 86 S.W.3d 613, 616 (Tex. Crim. App. 2002)**..................6**

*Douds v. State*, No. 14-12-00642-CR, 2013 WL 5629818 (Tex. App.─Houston [14th Dist.] Oct. 15, 2013), *rev'd by Douds v. State*, 434 S.W.3d 842 (Tex. App.─Houston [14th Dist.] 2014, pet. granted Sep. 17, 2014) **..................6**

*State v. Tercero*, No. 01-14-00120-CR, 2015 WL 1544519 at *4 (Tex. App.─Houston [1st Dist.] Apr. 2, 2015) **..................5**

*Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987) **..................5**

*Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 620-21 (1989)**..................5**

*State v. Villarreal*, No. PD-0306-14, 2014 WL 6734178 (Tex. Crim. App. Nov. 26, 2014) **..................passim**

*State v. Jackson*, PD-0823-14, 2015 WL 4024293 at *9 (Tex. Crim. App. Jul. 1, 2015) **..................7**

## **STATEMENT REGARDING ORAL ARGUMENT**

The State does not request oral argument.

In the
**COURT OF CRIMINAL APPEALS**
For the
**STATE OF TEXAS**

---

**THE STATE OF TEXAS**
*Petitioner*
*v*
**ALLEN TERCERO**
*Respondent*

---

**On State's Petition for Discretionary Review from the First Court of Appeals, Appeal Number 01-14-00120-CR**
**On Appeal from the 434th District Court of Fort Bend County, Texas, Cause Number 10-DCR-056111**

---

### STATEMENT OF THE CASE

Allen Tercero, hereinafter referred to as "Tercero," was seen by Sugar Land Police officers driving a vehicle late at night with a flat tire. The officers followed Tercero into a nearby parking lot, and upon approaching Tercero, observed him to

smell of alcohol, have bloodshot eyes, and slow, slurred speech. Tercero refused to perform field sobriety tests and was arrested for driving while intoxicated. The officers learned that Tercero had two prior convictions for driving while intoxicated, and based on this, they transported Tercero to a nearby hospital and obtained a "mandatory" blood draw over Tercero's objection.

Tercero moved to suppress the blood evidence relying on the Supreme Court's decision in *Missouri v. McNeely*, which was decided after he was arrested on this charge. The trial court granted Tercero's motion to suppress the blood evidence on the grounds that the taking of Tercero's blood without a warrant violated the Fourth Amendment to the United States Constitution under the rationale in *McNeely*.

## STATEMENT OF PROCEDURAL HISTORY

Tercero filed a motion to suppress in the trial court, arguing that the involuntary blood draw violated the Fourth Amendment to the United States Constitution. The trial court granted that motion, and the State appealed that ruling.

On April 2, 2015, the Fourteenth Court of Appeals affirmed the ruling of the trial court. The State filed a motion for rehearing and a motion for *en banc* reconsideration on April 14, 2015. The First Court of Appeals denied the State's motion for rehearing and motion for *en banc* reconsideration on June 30, 2015.

4

## GROUND FOR REVIEW

Did the First Court of Appeals err in holding that there is no way in which the warrantless blood draw taken in this case was reasonable under the Fourth Amendment to the United States Constitution, in reliance on this Court's opinion in *State v. Villarreal*?

## ARGUMENT AND AUTHORITIES

The First Court of Appeals, in affirming the trial court's grant of Tercero's motion to suppress the mandatory blood draw in this case, held that implied consent could not justify the warrantless blood draw in this case where Tercero withdrew his consent. *State v. Tercero*, No. 01-14-00120-CR, 2015 WL 1544519 at *4 (Tex. App.—Houston [1st Dist.] Apr. 2, 2015). The First Court of Appeals based this holding on this Court's opinion in *State v. Villarreal*, No. PD-0306-14, 2014 WL 6734178 (Tex. Crim. App. Nov. 26, 2014). *Id.*

The State raised numerous other grounds in support of its argument that the warrantless blood draw in this case was permissible under the Fourth Amendment, which were also found unconvincing by the First Court of Appeals, including that the warrantless blood draw was justified under the "special needs doctrine" under *Maryland v. King*, 133 S.Ct. 1958, 1980 (2013), *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 620-21 (1989), and *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987). The First Court of Appeals' opinion also overruled that argument, holding that a Fourth Amendment balancing test was not to be used to uphold the officers'

5

taking of Tercero's blood. *Tercero*, 2015 WL 1544519 at *6.

The First Court of Appeals also found unconvincing the State's argument that Article 38.23 of the Texas Code of Criminal Procedure should not be read to require exclusion of the blood draw evidence obtained in this case in light of the fact that the officers were acting in reliance on the body of case law which read Chapter 724 of the Texas Transportation Code to mandate blood draws without warrants. *See, e.g.*, *Beeman v. State*, 86 S.W.3d 613, 616 (Tex. Crim. App. 2002); *Douds v. State*, No. 14-12-00642-CR, 2013 WL 5629818 (Tex. App.—Houston [14th Dist.] Oct. 15, 2013), *rev'd by Douds v. State*, 434 S.W.3d 842 (Tex. App.—Houston [14th Dist.] 2014, pet. granted Sep. 17, 2014).

This Court has since granted the State's motion for rehearing in *State v. Villarreal*. The State's motion for rehearing raised both the issue of the continuing nature of the defendant's consent despite his attempt to withdraw that consent and the applicability of the special needs doctrine. *See* State's Motion for Rehearing and Amended Motion for Rehearing in *State v. Villarreal* attached hereto as Exhibit B in the attached appendix. Being that these issues are considered worthy of this Court's reconsideration in *Villarreal*, this Court should grant the State's petition for discretionary review in this case to address these same issues here.

The concurrence in *State v. Jackson*, PD-0823-14, 2015 WL 4024293 at *9 (Tex. Crim. App. Jul. 1, 2015), *Hervey, concurring*, also addressed the application of the exclusionary rule embodied in Texas Code of Criminal Procedure article 38.23 and discussed how the application of the exclusionary rule should not be applied in that case because it would not serve the ends of the exclusionary rule in that it would not have prevented police misconduct. The State would urge the Court to adopt that stance with regard to the blood evidence in this case as the officers were acting under a reasonable understanding that the statute in question authorized their act and they did not intend, nor were they argued to have intended any illegality.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Petitioner, the State of Texas prays that the State's Petition for Discretionary Review be granted, that the case be set for submission, and that after submission, this Court reverse the decision of the Court of Appeals.

Respectfully submitted,

**John F. Healey, Jr.**

/s/ Jason Bennyhoff
**Jason Bennyhoff**
Assistant District Attorney
Fort Bend County, Texas
TBC# 24050277
309 South Fourth Street, 2nd Floor
Richmond, Texas 77469
281-341-4460 (office)
281-238-3340 (fax)

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing State's Petition for Discretionary Review (and its appendix) has been served upon Leslie LeGrand, counsel for Allen Tercero, at brittanyb@texasdwilaw.com, said email address having been verified as a correct email address for Mr. LeGrand's legal secretary, and that these documents are being served by U.S. mail on counsel for Allen Tercero, and upon the State Prosecuting Attorney by U.S. mail on the date of the filing of the original in this case.

/s/ Jason Bennyhoff

Jason Bennyhoff

## Certificate of Compliance with Texas Rule of Appellate Procedure 9.4(i)(3)

In accordance with Texas Rule of Appellate Procedure 9.4(i)(3), I, Jason Bennyhoff, hereby certify that the foregoing electronically created document has been reviewed by the word count function of the creating computer program, and has been found to be in compliance with the requisite word count requirement in that its word count in its entirety is 1,690 words.

/s/Jason Bennyhoff

Jason Bennyhoff

APPENDIX

Exhibit A - First Court of Appeals opinion in *State v. Tercero*

Exhibit B - Order granting rehearing, State's Motion for Rehearing and Amended

Motion for Rehearing in *State v. Villarreal*

# EXHIBIT A

Opinion issued April 2, 2015



In The

# Court of Appeals

For The

## First District of Texas

---

## NO. 01-14-00120-CR

---

### THE STATE OF TEXAS, Appellant

### V.

### ALLEN TERCERO, Appellee

---

**On Appeal from the 434th District Court**
**Fort Bend County, Texas**
**Trial Court Case No. 10-DCR-056111**

---

## OPINION

In this driving while intoxicated ("DWI") case, the State of Texas appeals from the trial court's order granting appellee Allen Tercero's motion to suppress results of a warrantless blood-draw. In two issues, the State argues that (1) the trial court erred in concluding that drawing Tercero's blood without a warrant violated

the Fourth Amendment of the United States Constitution, and (2) the trial court erred "when it impliedly held that Texas Transportation Code [section] 724.012(b)(3)(B) is unconstitutional."

We affirm.

## Background

Officers K. Hogg and J. Huang observed Tercero's vehicle driving late at night with a flat tire. They followed Tercero into a nearby parking lot. Officer Hogg approached Tercero, who was then standing outside his vehicle talking on a cell phone, and noticed that he demonstrated signs of intoxication, including the smell of alcohol on his breath, bloodshot eyes, and slow, slurred speech. Tercero refused to perform field sobriety tests, so Officer Hogg placed him under arrest for DWI. Tercero refused to provide a specimen of his breath or blood. However, the officers learned that he had two previous convictions for DWI and believed they had authority to conduct a warrantless blood draw pursuant to Transportation Code chapter 724. Accordingly, they transported Tercero to a local hospital where a medical professional collected the specimen of Tercero's blood.

Officer Hogg testified that he encountered Tercero in a parking lot across the street from the police station, and, thus, he was in close proximity to the police department. He testified that there was no exigency that affected his ability to procure a warrant. He stated that he could have obtained a warrant if he had

2

wanted to do so, but he had chosen not to, based on his understanding of the applicable provisions of the Transportation Code.

Tercero moved to suppress evidence against him, including any statements and blood evidence, on the basis that his arrest was warrantless and, therefore, illegal under both the Fourth Amendment of the United States Constitution and the Texas Constitution. Tercero further argued at the end of the suppression hearing that the recent United States Supreme Court case *Missouri v. McNeely* supported his contention that the warrantless, nonconsensual taking of his blood sample violated his Fourth Amendment rights.

The trial court granted Tercero's motion to suppress in part, ordering that the blood evidence should be suppressed because it was taken without a warrant and because "[no] exigent circumstances existed to justify a warrantless blood draw." The trial court specifically found that Tercero's blood was drawn without his consent or a warrant, that Officer Hogg "did not seek a warrant even though he testified he had the means to secure a warrant without significantly undermining the efficacy of the search," and that "[n]o exigent circumstances existed because there were several officers on the scene to aid [in] investigating the DWI and Officer Hogg testified he could have secured a warrant if he desired and [he] himself testified no exigent circumstances existed excusing him from securing a warrant." The trial court concluded that Officer Hogg's blood draw was a search

3

and seizure in violation of the Fourth Amendment of the United States Constitution, that a warrant was required to seize Tercero's blood absent exigent circumstances, and that no exigent circumstances existed to justify a warrantless blood draw. This appeal by the State followed.

## Motion to Suppress

In its first issue, the State argues that the trial court erred in suppressing the results of Tercero's blood test. Specifically, the State argues that Tercero was "deemed to have consented to submit to the taking of one or more specimens" of blood pursuant to Texas's implied consent statutory framework as set out in Transportation Code chapter 724. It also argues that *McNeely* did not invalidate the Texas mandatory blood draw scheme, that the "totality of the circumstances" test set out in *Schmerber v. California* is still valid, and that "the mandatory blood draw statute here essentially enshrines an exigency in the statutory framework of the kind recognized by *Schmerber*."

The State further argues that even if *McNeely* does invalidate the implied consent and mandatory blood draw statutes, it should not be applied retroactively to this case. In supplemental briefing, the State argues that the officer's warrantless drawing of the blood sample was undertaken as a result of a reasonable mistake of law and, thus, the blood draw without a warrant was reasonable under the Fourth Amendment.

4

## A.    Standard of Review

We review a ruling on a motion to suppress evidence for an abuse of discretion. *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008) (citing *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)). When we review a trial court's ruling on a motion to suppress, we give "almost total deference to a trial court's express or implied determination of historical facts and review de novo the court's application of the law of search and seizure to those facts." *Id.* We view the evidence in the light most favorable to the trial court's ruling. *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007) (quoting *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006)). The trial court is the "sole trier of fact and judge of credibility of the witnesses and the weight to be given to their testimony." *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). The trial court may choose to believe or disbelieve any part or all of a witness's testimony. *Green v. State*, 934 S.W.2d 92, 98 (Tex. Crim. App. 1996). We sustain the trial court's ruling if it is reasonably supported by the record and correct on any theory of law applicable to the case. *Laney v. State*, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003).

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV; *State v. Villarreal*, —S.W.3d—, No. PD-0306-14, 2014 WL 6734178, at *8 (Tex. Crim. App. Nov. 26, 2014). The taking of a blood

5

specimen is a search and seizure under the Fourth Amendment. *Schmerber v. California*, 384 U.S. 757, 767, 86 S. Ct. 1826, 1834 (1966); *Villarreal*, 2014 WL 6734178, at *9.

"In general, to comply with the Fourth Amendment, a search of a person pursuant to a criminal investigation (1) requires a search warrant or a recognized exception to the warrant requirement, and (2) must be reasonable under the totality of the circumstances." *Villarreal*, 2014 WL 6734178, at *8; *see also Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 514 (1967) (holding that warrantless search or seizure is per se unreasonable unless it falls under recognized exception to warrant requirement). Established exceptions to the warrant requirement include the consent exception, the exigency exception, the automobile exception, the search-incident-to-arrest exception, and the special-needs doctrine. *See Villarreal*, 2014 WL 6734178, at *8 (discussing consent, automobile, search-incident-to-arrest, and special-needs exceptions); *Gore v. State*, 451 S.W.3d 182, 193-97 (Tex. App.—Houston [1st Dist.] 2014, pet. filed) (discussing exigency exception). There is no case that establishes Texas's implied consent statute as an exception to the warrant requirement. *See Villarreal*, 2014 WL 6734178 at *8, 17 (rejecting argument that warrantless, nonconsensual blood draw conducted pursuant to implied consent statute should be upheld as reasonable in light of legislature's clear intent to except such searches from warrant requirement).

6

In *Schmerber v. California*, the Supreme Court upheld a warrantless blood test of a DWI suspect involved in a car crash because the officer "might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened the destruction of evidence." 384 U.S. at 770-71, 86 S. Ct. at 1835-36. In reaching this conclusion, the *Schmerber* Court stated, "Search warrants are ordinarily required for searches of dwellings, and absent an emergency, no less could be required where intrusions into the human body are concerned." *Id.* at 770, 86 S. Ct. at 1835. In excepting Schmerber's blood test from this general warrant requirement, the Supreme Court identified exigent circumstances present in that case: the dissipation of alcohol as the body functions to eliminate it from the system, the time taken to investigate the crash and bring the accused to the hospital, and the lack of time to seek out a magistrate and obtain a warrant. *Id.* at 770-71, 86 S. Ct. at 1835-36. The *Schmerber* Court also considered the fact that the test chosen to measure the accused's blood-alcohol level was a reasonable one and that it was conducted in a reasonable manner. *Id.* at 771, 86 S. Ct. at 1836. The Court concluded that Schmerber's right to be free of unreasonable searches or seizures was not violated, and it stated, "It bears repeating, however, that we reach this judgment only on the facts of the present record." *Id.* at 772, 86 S. Ct. at 1836.

The Supreme Court has since recognized the exigent-circumstances exception to the warrant requirement as applying "when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *Missouri v. McNeely*, 133 S. Ct. 1552, 1558 (2013); *Kentucky v. King*, 563 U.S. —, —, 131 S. Ct. 1849, 1856 (2011). "To determine whether a law enforcement officer faced an emergency that justified acting without a warrant, this Court looks to the totality of the circumstances." *McNeely*, 133 S. Ct. at 1559 (citing *Brigham City v. Stuart*, 547 U.S. 398, 406, 126 S. Ct. 1943, 1949 (2006)); *see Schmerber*, 384 U.S. at 770–71, 86 S. Ct. at 1835–36 (applying totality-of-circumstances approach in analyzing whether exigent circumstances justified warrantless blood test).

In *McNeely*, the Supreme Court considered and rejected Missouri's claim that "so long as the officer has probable cause and the blood test is conducted in a reasonable manner, it is categorically reasonable for law enforcement to obtain the blood sample without a warrant." 133 S. Ct. at 1560–61. The *McNeely* Court refused to recognize a per se exigency justifying a warrantless search and held, "consistent with general Fourth Amendment principles, that exigency in this context must be determined case by case based on the totality of the circumstances." *Id.* at 1556. *McNeely* reaffirmed that a warrantless search of a person for the purpose of gathering evidence in a criminal investigation can be

8

justified "only if it falls within a recognized exception" to the warrant requirement. and that this principle applies to compulsory blood collection during a DWI investigation. *Id.* at 1558; *Villareal*, 2014 WL 6734178, at *9.

## B. Texas's Implied Consent Statute as an Exception to the Warrant Requirement

Here, the State first argues that Tercero was "deemed to have consented" to the blood test under provisions of the Texas Transportation Code that establish implied consent to the taking of breath or blood specimens for all drivers arrested on suspicion of DWI, principally section 724.011, which provides:

> If a person is arrested for an offense arising out of acts alleged to have been committed while the person was operating a motor vehicle in a public place . . . the person is deemed to have consented, subject to this chapter, to submit to the taking of one or more specimens of the person's breath or blood for analysis to determine the alcohol concentration or the presence in the person's body of a controlled substance, drug, dangerous drug, or other substance.

TEX. TRANSP. CODE ANN. § 724.011(a) (Vernon 2011); *Villarreal*, 2014 WL 6734178, at *6.

Section 724.011 is "modified by section 724.013, which establishes a right to refuse to provide a breath or blood sample in routine DWI cases." TEX. TRANSP. CODE ANN. § 724.013 (Vernon 2011) (providing that "a specimen may not be taken if a person refuses to submit to the taking of a specimen designated by a peace officer"); *Villarreal*, 2014 WL 6734178, at *6.

However, Transportation Code section 724.012(b) establishes that when certain aggravating factors are present during a DWI stop an officer is required to obtain a specimen even if the suspect refuses. TEX. TRANSP. CODE ANN. § 724.012(b) (Vernon 2011); *Villarreal*, 2014 WL 6734178, at *6. Specifically, section 724.012(b)(3)(B) provides that a peace officer "shall require the taking of a specimen of the person's breath or blood" if the arrest is for an offense "involving the operation of a motor vehicle . . . and the person refuses the officer's request to submit to the taking of a specimen voluntarily" and if, "at the time of the arrest, the officer possesses or receives reliable information from a credible source that the person . . . on two or more occasions, has been previously convicted of . . . an offense under Section 49.04, 49.05, 49.06, or 49.065, Penal Code." TEX. TRANSP. CODE ANN. § 724.012(b)(3)(B); *Villarreal*, 2014 WL 6734178, at *7. Thus, in relevant part, the Transportation Code provides for a mandatory blood draw if the defendant has two prior DWI convictions.

The State essentially argues that the mandatory blood draw may be taken pursuant to the implied-consent statute without a warrant and without the necessity of establishing a recognized exception to the warrant requirement. In *State v. Villarreal*, however, the Court of Criminal Appeals rejected the State's contention that the implied-consent and mandatory-blood-draw provisions of the Transportation Code establish a constitutionally valid basis for conducting a

10

nonconsensual, warrantless search. *Villarreal*, 2014 WL 6734178, at *6–8. The Court of Criminal Appeals held that, "to be valid for Fourth Amendment purposes, consent must be freely and voluntarily given based on the totality of the circumstances, and must not have been revoked or withdrawn at the time of the search." *Id.* at 11 (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S. Ct. 2041, 2047–48 (1973), and *Florida v. Jimeno*, 500 U.S. 248, 252, 111 S. Ct. 1801, 1804 (1991)).

This Court has likewise held that the implied-consent and mandatory-blood-draw provisions do not justify a blood draw undertaken in the absence of a warrant or recognized exception to the warrant requirement. *Gore*, 451 S.W.3d at 193. We held that "implied consent that cannot be withdrawn does not meet the requirements for voluntary consent under the Fourth Amendment." *Id.; see also State v. Anderson*, 445 S.W.3d 895, 908 (Tex. App.—Beaumont 2014, no pet.) (concluding that section 724.012(b) "does not constitute an exception to the Fourth Amendment's warrant requirement"); *Aviles v. State*, 443 S.W.3d 291, 294 (Tex. App.—San Antonio 2014, pet. filed) (op. on remand) (holding same); *Forsyth v. State*, 438 S.W.3d 216, 222–23 (Tex. App.—Eastland 2014, pet. ref'd) (holding that implied consent under Transportation Code is not equivalent to voluntary consent for Fourth Amendment purposes).

11

The Court of Criminal Appeals in *Villarreal* stated, "We agree with these courts' assessments that, in the context of a nonconsensual, warrantless bodily search of a person suspected of criminal activity, a statute providing for irrevocable implied consent cannot supply the type of voluntary consent necessary to establish an exception to the Fourth Amendment warrant requirement." 2014 WL 6734178, at *14. It concluded that "implied consent that has been withdrawn or revoked by a suspect cannot serve as a substitute for the free and voluntary consent that the Fourth Amendment requires." *Id.* at *11.

Here, it is undisputed that Tercero refused to provide either a blood or breath specimen at the time he was arrested for DWI and that Officer Hogg did not obtain a warrant. We conclude that, under the totality of the circumstances, Tercero had not freely and voluntarily given consent to the search, and he revoked or withdrew any implied consent at the time of the search. Thus, we conclude that Tercero did not provide consent to the blood draw consistent with the requirements of the Fourth Amendment. *See Schneckloth*, 412 U.S. at 227, 93 S. Ct. at 2047–48; *Villarreal*, 2014 WL 6734178, at *11, 14; *Gore*, 451 S.W.3d at 193.

## C. General Fourth Amendment Balancing Test

The State further argues, however, that *McNeely* did not invalidate *Schmerber*, which applied the totality-of-the-circumstances test to a determination of whether exigent circumstances justified deviating from the general warrant

requirement in a particular case. 384 U.S. at 770–71, 86 S. Ct. at 1835–36. It argues that "[t]he ultimate question in Fourth Amendment analysis is that of reasonableness, which necessarily weighs privacy interests versus societal interests in public safety and law enforcement," and that Texas's mandatory-blood-draw and implied-consent statutory scheme satisfies this balancing test.

We acknowledge that *McNeely* did not overrule *Schmerber*. *See McNeely*, 133 S. Ct. at 1556 (clarifying that *Schmerber* did not create per se exigency exempting blood alcohol tests from warrant requirement and that determination of existence of exigent circumstances must be done on case-by-case basis based on totality of circumstances); *see also Gore*, 451 S.W.3d at 194 ("The *McNeely* court did not overrule *Schmerber*, it merely held that exigency must be determined on a case-by-case basis, and that the metabolization of alcohol did not create a per se situation of exigency."). However, *McNeely* reaffirmed the Supreme Court's prior holdings that "a warrantless search of the person is reasonable only if it falls within a recognized exception" to the warrant requirement. *McNeely*, 133 S. Ct. at 1558 (citing *United States v. Robinson*, 414 U.S. 218, 224, 94 S. Ct. 467, 471–72 (1973)).

The Court of Criminal Appeals recognized this holding in *Villarreal* and concluded that a search of a person conducted pursuant to a criminal investigation requires a search warrant or a recognized exception to the warrant requirement.

13

2014 WL 6734178, at \*8 (citing *McNeely*, 133 S. Ct. at 1558, *Riley v. California*, 134 S. Ct. 2473, 2482 (2014), and *King*, 131 S. Ct. at 1856). In *Villarreal*, the State argued, as it does here, that the warrantless taking of a blood sample could be upheld under a general Fourth Amendment balancing test when the defendant has had two prior DWI convictions and has thus impliedly consented to the blood draw. *Id.* at \*16. The Court of Criminal Appeals rejected this argument, stating, "[W]e disagree that a balancing test is appropriate given the context." *Id.* at \*17. The *Villarreal* court cited several United States Supreme Court opinions, including *McNeely* and *Riley*, in concluding that "[t]he Supreme Court has made clear that, in the context of an active criminal investigation, and when the primary goal of law-enforcement activity is the gathering of evidence, a warrantless search of a person is unreasonable unless it falls within an established exception to the warrant requirement." *Id.* (citing *McNeely*, 133 S. Ct. at 1558, and *Riley*, 134 S. Ct. at 2482).

The Court of Criminal Appeals further stated that even if it were to accept the viability of a balancing test as a substitute for the established exceptions to the warrant requirement, it "would conclude that, on balance, a DWI suspect's privacy interest outweighs the State's interest in preventing drunk driving through warrantless searches." *Id.* at \*18. It opined, "*McNeely* reaffirmed the principle that a compelled physical intrusion beneath the skin to obtain evidence in a

14

criminal investigation implicates significant privacy interests, and this privacy interest is not automatically diminished simply because an individual is suspected of a serious DWI offense." *Id.* (citing *McNeely*, 133 S. Ct. at 1558).

*McNeely* also held that "'the general importance of the government's interest in [curbing DWI offenses] does not justify departing from the warrant requirement without a showing' that some established exception, such as exigency, applies." *Id.* (quoting *McNeely*, 133 S. Ct. at 1565). The Court of Criminal Appeals "acknowledge[d] the magnitude of the drunk driving problem in Texas and the government's legitimate and substantial interest in curbing that problem," but it held that solving the problem "through warrantless, nonconsensual searches of suspects' blood" violates the Fourth Amendment, especially "in light of the fact that warrants for such blood testing are often readily available." *Id.*

Here, we likewise "decline to disregard [these] well-establish[ed] principles in favor of a more generalized balancing-of-interests test." *See id.* at *17–18. We conclude, as the court did in *Villarreal*, that a general balancing test is not appropriate here to justify a warrantless blood draw, and even if it were, the State's interest in curbing drunk driving through the use of warrantless searches does not outweigh a DWI suspect's privacy interest. We conclude that the warrantless taking of Tercero's blood sample pursuant to Texas's implied-consent and mandatory-blood-draw statutory scheme did not satisfy the requirements of the

15

Fourth Amendment without a showing that some established exception to the warrant requirement applied and that, here, none did apply. *See id.* at \*11, 18; *Gore*, 451 S.W.3d at 193; *see also McNeely*, 133 S. Ct. at 1565 (holding that "the general importance of the government's interest in [curbing DWI offenses] does not justify departing from the warrant requirement without a showing" that some established exception to warrant requirement applies).

The State does not argue that any other exception to the warrant requirement applies in this case. *See Amador v. State*, 221 S.W.3d 666, 672–73 (Tex. Crim. App. 2007) (holding that once defendant establishes absence of warrant, State must prove that warrantless search was reasonable under totality of circumstances); *Gore*, 451 S.W.3d at 193 (holding, where appellant withdrew any implied consent that she may have given and affirmatively refused to give consent for warrantless blood draw, that warrantless search "may not be premised on the consent exception to the warrant requirement" and that "the State must come forth with some other recognized exception to the warrant requirement"). In fact, the trial court found, based on Officer Hogg's own direct testimony, that no exigent circumstances existed to justify a warrantless blood draw. Nor did it find any other established exception to the warrant requirement.

## D. Application of *McNeely*

The State argues that even if *McNeely* invalidates the Transportation Code's mandatory-blood-draw and implied-consent provisions. it should not be applied "retroactively" to this case.

New constitutional rules governing the conduct of criminal prosecutions must be "applied retroactively to all cases, state or federal, pending on direct review or not yet final" when the rule was announced, regardless of whether they constitute a clear break from past precedent. *Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S. Ct. 708, 716 (1987); *Steadman v. State*, 360 S.W.3d 499, 504 n.13 (Tex. Crim. App. 2012); *Taylor v. State*, 10 S.W.3d 673, 678 (Tex. Crim. App. 2000).

We first note that it does not appear that *McNeely* set out a new constitutional rule—rather, it declined to recognize one. *McNeely* clarified that *Schmerber* did not create a per se exigency in the case of blood alcohol evidence, but instead only recognized that exigent circumstances might, in limited circumstances, provide an exception to the warrant requirement. *McNeely*, 133 S. Ct. at 1556–58. *McNeely* reaffirmed the Supreme Court's prior rulings that the admissibility of blood evidence taken pursuant to the exigency exception to the warrant requirement must be reviewed on a case-by-case basis under a totality of the circumstances. *Id* Moreover, even if *McNeely* and the Texas cases applying it

17

did set out a new rule, that rule would apply here. *McNeely* was decided in April 2013, and the hearing on Tercero's motion to suppress occurred on September 13, 2013. Thus, this case was clearly not yet final at the time *McNeely* was announced and it applies here on direct appeal. *See Griffith*, 479 U.S. at 328, 107 S. Ct. at 716; *Steadman*, 360 S.W.3d at 504 n.13; *Taylor*, 10 S.W.3d at 678.

## E. Good-Faith Exception to Texas's Exclusionary Rule for Mistake of Law

The State further argues that because Officer Hogg acted in good faith reliance on the Transportation Code's provisions at the time he collected Tercero's blood sample, the evidence should not be excluded under Texas's exclusionary rule, set out in Code of Criminal Procedure article 38.23.

However, Officer Hogg's good faith reliance on his belief that the Transportation Code permitted him to collect Tercero's blood sample without a warrant or a recognized exception to the warrant requirement is irrelevant here. Texas has adopted an exclusionary rule that is broader than its federal counterpart. *Miles v. State*, 241 S.W.3d 28, 34 (Tex. Crim. App. 2007). The Texas exclusionary rule provides:

> (a)   No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.
>
> . . . .

18

(b) It is an exception to the provisions of Subsection (a) of this Article that the evidence was obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause.

TEX. CODE CRIM. PROC. ANN. art. 38.23 (Vernon 2005).

Thus, evidence obtained in violation of a constitutional provision shall not be admitted in evidence against Tercero, and the only exception provided for by the Texas Legislature depends upon issuance of a warrant based on probable cause. *Id.* It is undisputed that no such warrant existed in this case, and thus this "good-faith exception" does not apply here. *See Douds v. State,* 434 S.W.3d 842, 861–62 (Tex. App.—Houston [14th Dist.] 2014, pet. granted).

The State argues that we should expand the statutory "good-faith" exception to include this situation, where the officer acted on a good faith belief that the law justified his actions. However, the State's reliance on *Heien v. North Carolina* and similar federal authority is misplaced. In *Heien,* the Supreme Court concluded that the Fourth Amendment allowed reasonable suspicion as required for a traffic stop or an investigatory stop to rest on a reasonable mistake of law. 135 S. Ct. 530, 536–37 (2014). *Heien* is distinguishable on its facts because it dealt with the formation of reasonable suspicion necessary to initiate an investigatory stop, not a mistake of law that might permit a warrantless, nonconsensual search of a person. *See id.* And, as our sister court recognized in a similar case, "The Court of Criminal Appeals has previously rejected an effort to broaden [Texas's statutory]

19

good-faith exception using federal precedent, and it has refused to adopt federal exceptions inconsistent with the text of our statutory exclusionary rule." *Douds*, 434 S.W.3d at 861–62 (citing *Wehrenberg v. State*, 416 S.W.3d 458, 473 (Tex. Crim. App. 2013), *State v. Daugherty*, 931 S.W.2d 268, 270 (Tex. Crim. App. 1996), and *Howard v. State*, 617 S.W.2d 191, 193 (Tex. Crim. App. 1979) (op. on reh'g)).

Accordingly, we decline to apply the "reasonable mistake of law" reasoning from *Heien* to create a new exception inconsistent with the text of article 38.23. Because the warrantless, nonconsensual blood draw here violated Tercero's Fourth Amendment rights, we conclude that the trial court did not err in suppressing the blood evidence. *See Laney*, 117 S.W.3d at 857 (holding that we sustain trial court's ruling if it is reasonably supported by record and correct on any applicable theory of law).

We overrule the State's first issue.

### Constitutionality of Transportation Code section 724.012

In its second issue, the State argues that the trial court erred in impliedly ruling that Transportation Code section 724.012(b)(3)(B) is unconstitutional. However, we reject the contention that the trial court impliedly found Transportation Code section 724.012(b)(3)(B) unconstitutional. The trial court did

20

not issue any findings of fact or conclusions of law relevant to the facial constitutionality of the statute, nor was it asked or required to do so in this case.

This Court has previously held that section 724.012(b) was not facially unconstitutional even though it was applied in a way that violated a particular defendant's Fourth Amendment rights. *Gore*, 451 S.W.3d at 188–89, 197–98. We stated in *Gore* that "[s]ection 724.012(b) merely requires an officer to take a blood or breath specimen in certain circumstances" and that the statute is "mandatory" in the sense that "the officer has no discretion in [the enumerated situations] to obtain either a blood or a breath specimen." *Id.* at 188 (quoting *McGruder v. State*, No. 10-13-00109-CR, 2014 WL 3973089, at *3 (Tex. App.—Waco Aug. 14, 2014, pet. granted)). We observed that "as written, section 724.012(b) does not require a blood or breath specimen to be taken contrary to the Fourth Amendment" and that "[i]t is the officer's failure to obtain a warrant and the State's failure to prove an exception to the warrant requirement, not the mandatory nature of the blood draw statute, that violate the Fourth Amendment." *Id.* at 189 (quoting *McGruder*, 2014 WL 3973089, at *3, and citing *Douds*, 434 S.W.3d at 861). We concluded that "a nonconsensual blood draw, with a warrant, would not be constitutionally infirm." *Id.*

Likewise, here, the trial court was not required to determine that section 724.012(b) was facially unconstitutional in order to determine that the

21

nonconsensual, warrantless taking of Tercero's blood specimen violated his Fourth Amendment rights.

We overrule the State's second issue.

## Conclusion

We affirm the ruling of the trial court granting Tercero's motion to suppress his nonconsensual, warrantless blood sample.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Bland, and Massengale.

Publish. TEX. R. APP. P. 47.2(b).

# EXHIBIT B

SHARON KELLER
PRESIDING JUDGE

LAWRENCE E. MEYERS
CHERYL JOHNSON
MIKE KEASLER
BARBARA P. HERVEY
ELSA ALCALA
BERT RICHARDSON
KEVIN P. YEARY
DAVID NEWELL
JUDGES



# COURT OF CRIMINAL APPEALS
P.O. BOX 12308, CAPITOL STATION
AUSTIN, TEXAS 78711

ABEL ACOSTA
CLERK
(512) 463-1551

SIAN SCHILHAB
GENERAL COUNSEL
(512) 463-1597

Wednesday, February 25, 2015

Jacqueline Rae
Assistant District Attorney
901 Leopard, Room 206
Corpus Christi, TX 78401
* DELIVERED VIA E-MAIL *

District Attorney Nueces County
Mark Skurka
901 Leopard Room 206
Corpus Christi, TX 78401
* DELIVERED VIA E-MAIL *

Fred Jimenez
ATTORNEY AT LAW
509 Lawrence St., Suite 301
Corpus Christi, TX 78401
* DELIVERED VIA E-MAIL *

Douglas K. Norman
Assistant District Attorney
901 Leopard, Room 206
Corpus Christi, TX 78401
* DELIVERED VIA E-MAIL *

Re: STATE OF TEXAS VS. DAVID VILLARREAL
CCA No. PD-0306-14
Trial Court Case No. 12-CR-1000-H

Dear Counselors:

The Court has this day granted the State's motion for rehearing.

The case will be submitted to the Court on Wednesday, March 18, 2015.

Sincerely,

Abel Acosta, Clerk

PD-0306-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 12/10/2014 9:25:07 AM
Accepted 12/10/2014 9:35:22 AM
ABEL ACOSTA
CLERK

NO. PD-0306-14
(Appellate Court Cause No. 13-13-253-CR)

| THE STATE OF TEXAS, | § | IN THE |
| Petitioner, | § | |
| | § | |
| V. | § | COURT OF CRIMINAL APPEALS |
| | § | |
| DAVID VILLARREAL, | § | |
| Respondent. | § | OF TEXAS |

## PETITIONER'S MOTION FOR REHEARING

TO THE HONORABLE COURT OF APPEALS:

Comes now the State of Texas, by and through the District Attorney for the 105th Judicial District of Texas, and submits this motion for rehearing, pursuant to Tex. R. App. P. 79.1, and requests that the Court reconsider its November 26, 2014, opinion in this case, grant this motion, and resubmit this case.

For the reasons set forth in the State's briefs, as well as those set forth in the dissenting opinions, the State believes that rehearing and reconsideration are appropriate in the present case.

### I. WAIVER.

Specifically, the State contends that the majority opinion too quickly dismissed the State's argument that Texas drivers have validly waived their right to object to a warrantless blood draw under the limited circumstances set out in the implied consent / mandatory draw statute.

1

This Court's majority opinion stated, "we are aware of no Supreme Court cases approving of [the waiver] doctrine's applicability in a context similar to the one with which we are confronted today," distinguishing the present case from Supreme Court waiver cases based on federal regulations. (Slip. Op. at 25)  Yet, the majority opinion made no persuasive argument why waiver in the context of state regulation of a highly regulated activity like driving should be treated differently from the federally regulated activities in *Zap* and *Biswell*.

In *Zap*, the Supreme Court relied upon both federal statutory authority and a government contract with the defendant to establish a waiver of that defendant's right to insist on a warrant before his records could be inspected by government officials with whom he chose to do business as a Navy contractor. *See Zap v. United States*, 328 U.S. 624, 626-27, 66 S. Ct. 1277 (1946), *vacated on other grounds*, 330 U.S. 800 (1947).

In *Biswell*, the Supreme Court relied upon statutory authority for the warrantless inspection of a gun dealer's records, firearms and ammunition. *See United States v. Biswell*, 406 U.S. 311, 316, 92 S. Ct. 1593 (1972).

In the present case, the mere fact that the state, and not the federal government, regulates driving offers no principled reason for disallowing waiver. Nor should it matter that driving is engaged in for both personal and

2

business reasons. Moreover, a Texas driver is clearly on notice of the waiver in question. In addition to the statute and presumed knowledge of the law, the Texas Driver's Handbook clearly puts present and prospective drivers on notice of the implied consent law. See Texas Driver's Handbook, p. 60 (rev. July 2012).

Finally, this Court should not reject the waiver exception simply because it has never before been applied to the particular circumstances in the present case. Waiver remains a "well recognized exception" to the warrant requirement, even though waiver of the specific right of an impaired driver to object to a warrantless blood draw may not be a "well recognized application" of that exception.

## II. SPECIAL NEEDS.

Alternatively, with regard to "special needs," the majority opinion too quickly dismissed that exception on the ground that the primary purpose of such a blood draw was supposedly to collect evidence for a criminal trial. In doing so, the Court neglected the equally valid and compelling purpose of revoking the driving privilege of those who have shown themselves to be too irresponsible to continue to hold that privilege.

Under the mandatory draw provisions of the Texas Transportation Code, in addition to providing evidence for a criminal prosecution, the results

of the blood draw may be used in the administrative removal of drunken drivers from the public roadways. The Department of Public Safety must suspend the person's license if analysis of the blood reveals an alcohol concentration of 0.08 or greater. TEX. TRANSP. CODE § 524.012(b)(1); TEX. PENAL CODE § 49.01(2)(B). The suspension is for a period of 90 days or one year, depending on whether the person has had any prior DWI arrests in the ten years preceding the current date of arrest. TEX. TRANSP. CODE § 524.022(a).

This Court has noted that the "primary purpose of the administrative license suspension statute is not to deter the licensee or to seek retribution, but is to protect the public from the carnage on the public roads of Texas caused by drunk drivers." *Ex parte Tharpe*, 935 S.W.2d 157, 159 (Tex. Crim. App. 1996); *see also Tex. Dept. Pub. Safety v. Richardson*, 384 S.W.2d 128, 132 (1964) ("But, it should be made abundantly clear that in this case [of driver's license revocation] we are not concerned with criminal penalties but rather with an administrative and regulative power vested in the Texas Department of Public Safety which power has for its purpose the protection of the lives and property of those using the highways.").

Accordingly, the mandatory draw statute may be justified under the special needs exception, as applied to the closely regulated

4

activity of driving on public roads, and as a tool not only of criminal enforcement but also for administrative measures designed to protect the public from drunk drivers by removing their driving privileges.

## III. GENERAL FOURTH AMENDMENT REASONABLENESS.

Finally, both Presiding Judge Keller's Dissenting Opinion, and Judge Meyers' Dissenting Opinion appear to rely on a generalized reasonableness approach that looks to the totality of the circumstances, the needs of the public and law enforcement, and the lowered expectation of privacy that repeat offenders have in the minor inconvenience of a compelled blood draw. The State suggests that these considerations are entitled to more weight than was given to them in the majority opinion.

## PRAYER

For the foregoing reasons, the State requests that the Court reconsider its November 26, 2014, opinion in this case; grant this motion for rehearing; resubmit this case in order to address the State's contentions as set out in this motion; and, after doing so, reverse the judgment of the Thirteenth Court of Appeals and vacate the trial court's suppression order.

Respectfully submitted,

/s/ *Douglas K. Norman*

Douglas K. Norman
State Bar No. 15078900

/s/ *Jacqueline Rae*

Jacqueline Lamerson
State Bar No. 24074923
Assistant District Attorneys
105th Judicial District of Texas
901 Leopard, Room 206
Corpus Christi, Texas 78401
(361) 888-0410
(361) 888-0399 (fax)

## RULE 9.4 (i) CERTIFICATION

In compliance with Texas Rule of Appellate Procedure 9.4(i)(3), I certify that the number of words in this motion, excluding those matters listed in Rule 9.4(i)(1), is 972.

/s/ *Douglas K. Norman*

_____
Douglas K. Norman

## CERTIFICATE OF SERVICE

This is to certify that, pursuant to Tex. R. App. P. 6.3 (a), copies of this motion were e-mailed on December 10, 2014, to Respondent's attorney, Mr. Fred Jimenez, and to the State Prosecuting Attorney.

/s/ *Douglas K. Norman*

_____
Douglas K. Norman

PD-0306-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 12/17/2014 2:52:50 PM
Accepted 12/18/2014 8:54:31 AM
ABEL ACOSTA
CLERK

NO. PD-0306-14
(Appellate Court Cause No. 13-13-253-CR)

| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | IN THE |
| Petitioner, | § | |
| | § | |
| V. | § | COURT OF CRIMINAL APPEALS |
| | § | |
| DAVID VILLARREAL, | § | |
| Respondent. | § | OF TEXAS |

## PETITIONER'S AMENDED MOTION FOR REHEARING

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

Comes now the State of Texas, by and through the District Attorney for the 105th Judicial District of Texas, and submits this amended motion for rehearing, pursuant to Tex. R. App. P. 79.1 & 79.3, and requests that the Court reconsider its November 26, 2014, opinion in this case, grant this motion, and resubmit this case.

For the reasons set forth in the State's briefs, as well as those set forth in the dissenting opinions, the State believes that rehearing and reconsideration are appropriate in the present case.

### I. WAIVER.

Specifically, the State contends that the majority opinion too quickly dismissed the State's argument that Texas drivers have validly waived their right to object to a warrantless blood draw under the limited circumstances set out in the implied consent / mandatory draw statute.

1

This Court's majority opinion stated, "we are aware of no Supreme Court cases approving of [the waiver] doctrine's applicability in a context similar to the one with which we are confronted today," distinguishing the present case from Supreme Court waiver cases based on federal regulations. (Slip. Op. at 25) Yet, the majority opinion made no persuasive argument why waiver in the context of state regulation of a highly regulated activity like driving should be treated differently from the federally regulated activities in *Zap* and *Biswell*.

In *Zap*, the Supreme Court relied upon both federal statutory authority and a government contract with the defendant to establish a waiver of that defendant's right to insist on a warrant before his records could be inspected by government officials with whom he chose to do business as a Navy contractor. *See Zap v. United States*, 328 U.S. 624, 626-27, 66 S. Ct. 1277 (1946), *vacated on other grounds*, 330 U.S. 800 (1947).

In *Biswell*, the Supreme Court relied upon statutory authority for the warrantless inspection of a gun dealer's records, firearms and ammunition. *See United States v. Biswell*, 406 U.S. 311, 316, 92 S. Ct. 1593 (1972).

In the present case, the mere fact that the state, and not the federal government, regulates driving offers no principled reason for disallowing waiver. Nor should it matter that driving is engaged in for both personal and

business reasons. Moreover, a Texas driver is clearly on notice of the waiver in question. In addition to the statute and presumed knowledge of the law, the Texas Driver's Handbook clearly puts present and prospective drivers on notice of the implied consent law. See Texas Driver's Handbook, p. 60 (rev. July 2012).

Finally, this Court should not reject the waiver exception simply because it has never before been applied to the particular circumstances in the present case. Waiver remains a "well recognized exception" to the warrant requirement, even though waiver of the specific right of an impaired driver to object to a warrantless blood draw may not be a "well recognized application" of that exception.

## II. SPECIAL NEEDS.

Alternatively, with regard to "special needs," the majority opinion too quickly dismissed that exception on the ground that the primary purpose of such a blood draw was supposedly to collect evidence for a criminal trial. In doing so, the Court neglected the equally valid and compelling purpose of revoking the driving privilege of those who have shown themselves to be too irresponsible to continue to hold that privilege.

Under the mandatory draw provisions of the Texas Transportation Code, in addition to providing evidence for a criminal prosecution, the results

3

of the blood draw may be used in the administrative removal of drunken drivers from the public roadways. The Department of Public Safety must suspend the person's license if analysis of the blood reveals an alcohol concentration of 0.08 or greater. TEX. TRANSP. CODE § 524.012(b)(1); TEX. PENAL CODE § 49.01(2)(B). The suspension is for a period of 90 days or one year, depending on whether the person has had any prior DWI arrests in the ten years preceding the current date of arrest. TEX. TRANSP. CODE § 524.022(a).

This Court has noted that the "primary purpose of the administrative license suspension statute is not to deter the licensee or to seek retribution, but is to protect the public from the carnage on the public roads of Texas caused by drunk drivers." *Ex parte Tharpe*, 935 S.W.2d 157, 159 (Tex. Crim. App. 1996); *see also Tex. Dept. Pub. Safety v. Richardson*, 384 S.W.2d 128, 132 (1964) ("But, it should be made abundantly clear that in this case [of driver's license revocation] we are not concerned with criminal penalties but rather with an administrative and regulative power vested in the Texas Department of Public Safety which power has for its purpose the protection of the lives and property of those using the highways.").

Accordingly, the mandatory draw statute may be justified under the special needs exception, as applied to the closely regulated

activity of driving on public roads, and as a tool not only of criminal enforcement but also for administrative measures designed to protect the public from drunk drivers by removing their driving privileges.

## III. GENERAL FOURTH AMENDMENT REASONABLENESS.

In addition, both Presiding Judge Keller's Dissenting Opinion, and Judge Meyers' Dissenting Opinion appear to rely on a generalized reasonableness approach that looks to the totality of the circumstances, the needs of the public and law enforcement, and the lowered expectation of privacy that repeat offenders have in the minor inconvenience of a compelled blood draw. The State suggests that these considerations are entitled to more weight than was given to them in the majority opinion.

## IV. MISTAKE OF LAW.

Finally, the State believes that the very recent opinion by the United States Supreme Court in *Heien v. North Carolina*, --- U.S. ---, No. 13-604 (December 15, 2014), should be considered by this Court on rehearing.

In *Heien*, the Supreme Court, arguably for the first time, recognized that an officer's reasonable mistake of law, like a reasonable mistake of fact, may render legal conduct that would otherwise amount to a Fourth Amendment violation. Specifically, in *Heien*, the Court held that it was "objectively reasonable for an officer in Sergeant Darisse's position to think that Heien's

5

faulty right brake light was a violation of North Carolina law. And because the mistake of law was reasonable, there was reasonable suspicion justifying the stop." Slip op. at 13.

On a broader level, the Supreme Court reasoned that, "[t]o be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them 'fair leeway for enforcing the law in the community's protection.'" Slip op. at 5 (quoting *Brinegar* v. *United States*, 338 U. S. 160, 176 (1949)).

In the present case, Officer Williams clearly relied on what he reasonably believed to be a valid statutory mandate for him to require the blood draw in question. To that extent that he reasonably relied upon the implied consent / mandatory draw statute, he, like Sergeant Darisse, did not violate the Fourth Amendment by conduct that would later be shown to be a mistake of law.

Since this Court did not have the benefit of the *Heien* opinion at the time it handed down its November 26th opinion, the State believes that rehearing and reconsideration would be especially appropriate.

## PRAYER

For the foregoing reasons, the State requests that the Court reconsider its November 26, 2014, opinion in this case; grant this motion for rehearing; resubmit this case in order to address the State's contentions as set out in this motion; and, after doing so, reverse the judgment of the Thirteenth Court of Appeals and vacate the trial court's suppression order.

Respectfully submitted,

/s/ *Douglas K. Norman*

Douglas K. Norman
State Bar No. 15078900

/s/ *Jacqueline Lamerson*

Jacqueline Lamerson
State Bar No. 24074923
Assistant District Attorneys
105th Judicial District of Texas
901 Leopard, Room 206
Corpus Christi, Texas 78401
(361) 888-0410
(361) 888-0399 (fax)

7

## RULE 9.4 (i) CERTIFICATION

In compliance with Texas Rule of Appellate Procedure 9.4(i)(3), I certify that the number of words in this motion, excluding those matters listed in Rule 9.4(i)(1), is 1,271.

/s/ *Douglas K. Norman*

_____
Douglas K. Norman

## CERTIFICATE OF SERVICE

This is to certify that, pursuant to Tex. R. App. P. 6.3 (a), copies of this motion were e-mailed on December 17, 2014, to Respondent's attorney, Mr. Fred Jimenez, and to the State Prosecuting Attorney.

/s/ *Douglas K. Norman*

_____
Douglas K. Norman