

## NUMBER 13-15-00041-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

THE STATE OF TEXAS,                                                          Appellant,

v.

UYLESS TROY BLAND,                                                          Appellee.

### On appeal from the 377th District Court
### of Victoria County, Texas.

## MEMORANDUM OPINION

### Before Justices Rodriguez, Benavides, and Perkes
### Memorandum Opinion by Justice Perkes

The State of Texas appeals from the trial court's order granting appellee Uyless

Troy Bland's motion to suppress evidence.[1]   By six issues, which we have regrouped as

---

[1] This appeal is brought pursuant to Texas Code of Criminal Procedure article 44.01(a)(5) which authorizes the State "to appeal an order of a court in a criminal case if the order . . . grants a motion to suppress evidence, a confession, or an admission, if jeopardy has not attached in the case and if the prosecuting attorney certifies to the trial court that the appeal is not taken for the purpose of delay and that the evidence, confession, or admission is of substantial importance in the case[.]"  TEX. CODE CRIM. PROC.

two, the State argues the trial court erred in concluding that law enforcement officers lacked reasonable suspicion to stop Bland's vehicle. We affirm.

## I. BACKGROUND

Bland was charged by indictment with one count of possession of cocaine in an amount less than one gram, and one count of possession of a substance in penalty group 3 in an amount of less than twenty-eight grams. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.115(a), 481.117(b) (West, Westlaw through 2015 R.S.). Both counts were alleged to have occurred in a drug-free zone.[2] *See id.* § 481.134(d), (e). Prior to trial, Bland filed a motion to suppress evidence obtained following the traffic stop.[3]

Officer Dennis Paine with the Victoria Police Department testified at the suppression hearing. Officer Paine explained that he was part of a team conducting undercover surveillance of a residence located on a dead-end street in Victoria. The Department received "numerous Crime Stoppers tips about [the] location," and officers made several recent arrests of individuals purchasing crack cocaine from the residence. Officer Paine was monitoring the area in an unmarked car from a distance of approximately 200 yards, when he observed a vehicle leave the area. He did not see the vehicle at the residence, but decided to follow the vehicle. He testified that the driver

---

ANN. art. 44.01(a)(5) (West, Westlaw through 2015 R.S.).

[2] The cocaine possession offense was further enhanced by Bland's prior felony convictions. *See* TEX. PENAL CODE ANN. § 12.42(a) (West, Westlaw through 2015 R.S.).

[3] Bland argued that the evidence was obtained "in violation of the rights of [Bland] pursuant to the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, [and] Article I, Sections 9, 10 and 19 of the Constitution of the State of Texas."

was "driving around in circles." After following the vehicle for two miles, Officer Paine observed the following from a distance of two car lengths:

> When the vehicle approached the intersection, stopped for the stop sign, stopped and pulled into the intersection, and the front of the vehicle was actually out into the intersection . . . From the vantage point, I could tell the front of the vehicle was well past the curb . . . I would say from the front tires forward.

Officer Paine noted that the intersection did not have a crosswalk or designated stop line. He believed the driver of the vehicle violated Texas Transportation Code section 544.010 due to his "[f]ailure to stop at a designated point, extending into the intersection." *See* TEX. TRANSP. CODE ANN. § 544.010 (West, Westlaw through 2015 R.S.). Officer Paine relayed his observation to Officer Kelly Gibbs, who was nearby in a marked police cruiser.

Officer Gibbs testified that after receiving notification of the traffic violation, she located the vehicle and initiated a traffic stop.[4] She identified Bland as the driver of the vehicle and recognized him from a previous narcotics investigation. Officer Gibbs "observed nervous behavior on the part of [Bland and his passenger]" and asked them to exit the vehicle so she could speak to them separately. She asked Bland where he was coming from and believed that his answers were evasive. Bland informed her that he had prior drug charges from 1996. Officer Gibbs asked for consent to search the vehicle, but Bland declined.

Officer Gibbs talked to the passenger, who disclosed prior drug-related arrests. The passenger stated that they recently stopped at a fast-food restaurant which was

---

[4] Reasonable suspicion can be based on information relayed to one officer by other officers and the sum of the information known to those officers cooperating with him. *See Mount v. State,* 217 S.W .3d 716, 728 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

inconsistent with Bland's representations. Officer Gibbs decided to have a canine conduct a free-air sniff of the vehicle to detect the presence of narcotics. The canine was present at the scene and alerted for the odor of narcotics on the vehicle. The free-air sniff occurred approximately seven minutes into the stop.

Officer Gibbs searched the vehicle and located drug paraphernalia, cocaine, and Ambien pills. The traffic stop was recorded by a dash camera, and the video was admitted into evidence. The video does not depict the alleged traffic violation, which was observed by Officer Paine in a separate unmarked vehicle.

After the State closed its presentation, Bland called Officer Jimmy McDonald who was riding in the unmarked vehicle with Officer Paine. Officer McDonald explained that as they followed Bland, he observed the vehicle driving in a circular pattern. He testified that he did not observe the traffic violation. Next, Bland called Officer Clay Fetters who was also in the vehicle with Officers Paine and McDonald. Officer Fetters explained that he observed Bland drive his vehicle in a circular pattern through the neighborhood. He stated he did not "have as good a view as [Officer] Paine," but observed Bland stop at an intersection, and "[Bland's vehicle] was into the intersection . . . past the stop sign."

The trial court granted Bland's motion to suppress and later issued written findings of fact and conclusions of law upon the State's request. The trial court found in relevant part the following:

> The residence or residences under surveillance could not be specifically identified by the law enforcement officers who testified during the suppression hearing. The defendant's car was located near the area under surveillance. The area is a "known" area whereby drugs are sold.

4

Officers' attention was directed to the defendant's car because he was driving near the area. While the officers' [sic] testified that the defendant was driving in "circles", the testimony showed the defendant made two consecutive turns and not a complete circle. The defendant did not commit a traffic offense when he made these consecutive turns. The defendant's driving was not erratic or bizarre.

. . . .

Det. Paine testified that he allegedly saw the defendant violate the transportation code by failing to stop at a stop sign. Specifically, Det. Paine testified that there was reasonable suspicion to . . . stop the defendant because he did not stop at the "designated point."

. . . .

The unmarked vehicle in which the law enforcement officers were in was at least three car lengths behind the defendant's vehicle. There is no clearly marked stop line or cross walk at the intersection of Brownson and Stayton Streets. *See* [TEX.] TRANSP[.] CODE . . . § 544.010[.] No other traffic violations were perceived by law enforcement on the day in question.

. . . .

The defendant stopped his vehicle at the intersection of Brownson and Stayton past the stop sign but not in the intersection.

The trial court issued the following conclusions of law:

The officers do not understand or are mistaken as to a driver's responsibility under Transportation Code [section] 544.010[.] An officer's mistaken understanding of the law will not justify a stop. *Goudeau v. State*, 209 S.W.3d 713 (Tex. App.—Houston [14th Dist.] 2006, no pet.).

. . . .

There was no search warrant in this case; therefore, the burden is on the State to show that there was reasonable suspicion for the stop of the defendant. *Ford v. State*, 158 S.W.3d 488 (Tex. Crim. App. 2005). This Court looked solely to whether an objective basis existed for the stop. *Id.* at 492. This Court also looked at the totality of the circumstances. *Curtis v. State*, 238 S.W.3d 376 (Tex. Crim. App. 2007).

In the absence of a cross walk or a clearly marked line, the Transportation Code [section] 544.010 . . . does not require a driver to stop a designated point. The statute at issue will be "taken and understood in their usual acceptation in common language.["] TEX. GOV 'T CODE ANN. §§ 311.002, 311.011[.] The requirement under the statute is for a driver to stop "at the place nearest the intersecting roadway where the operator has a view of approaching traffic on the intersecting roadway." [TEX.] TRANSP[.] CODE § 544.010 (c)[.]

. . . .

The defendant did not commit a traffic violation as a matter of law. Considering the totality of the circumstances viewed objectively, the defendant's stop and subsequent detention were unreasonable.

The State now appeals.

## II. SUPPRESSION OF EVIDENCE

### A. Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given to their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007). We give almost total deference to the trial court's findings of historical fact that are supported by the record and to mixed questions of law and fact that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673.

We "review de novo 'mixed questions of law and fact' that do not depend upon credibility and demeanor." *Id.* (quoting *Montanez v. State*, 195 S.W.3d 101, 107 (Tex. Crim. App. 2006)). Accordingly, the question of whether a certain set of historical facts

6

gives rise to reasonable suspicion is reviewed de novo. *Wade v. State*, 422 S.W.3d 661, 668 (Tex. Crim. App. 2013); *see Davis v. State*, 947 S.W.2d 240, 249 (Tex. Crim. App. 1997) (en banc) (Keller, J., concurring); *see also Madden v. State*, 242 S.W.3d 504, 517 (Tex. Crim. App. 2007) (providing that we review the legal question of whether totality of circumstances is sufficient to support officer's reasonable suspicion de novo).

## B.    Reasonableness of Initial Detention

By issues three through five, which we will address first, the State argues that the trial court erred in concluding Bland's initial detention was unreasonable.[5]    Specifically, the State argues the trial court incorrectly concluded "that Section 544.010(c) of the Texas Transportation Code does not mandate stopping prior to entering an intersection when approaching a stop sign on a street that does not have a crosswalk or designated stop line."    The State also argues "[i]n the alternative, the trial court committed reversible error by concluding that a mistake of law could not justify a traffic stop."    Finally, the State argues "[t]he trial court committed reversible error by concluding there was no reasonable suspicion for the traffic stop in this case."

### 1.    Applicable Law

A traffic stop is a seizure that implicates the United States and Texas Constitutions; therefore, the traffic stop must be reasonable.    U.S. CONST. amend. IV; TEX. CONST. art. I, § 9; *Johnson v. State*, 365 S.W.3d 484, 488 (Tex. App.—Tyler 2012, no pet.).    When

---

[5] Although framed as issues on appeal, we note that the State's first two issues are simply a discussion of the appropriate standard of review.    By its first issue, the State asserts that "[t]he appropriate standard of review in this case is de novo."    By its second issue, the State maintains that "[a] trial court is not entitled to implicit findings of fact when it submitted explicit findings of fact."    We will apply the appropriate standard of review as set forth in this opinion.

evaluating the reasonableness of an investigative detention, we conduct the inquiry set forth by the United States Supreme Court in *Terry v. Ohio* to determine whether: (1) the officer's action was justified at its inception; and (2) it was reasonably related in scope to the circumstances that initially justified the interference. *See* 392 U.S. 1, 19–20 (1968); *Davis v. State*, 947 S.W.2d 240, 242 (Tex. Crim. App. 1997).

An officer may conduct a brief investigative detention, or *Terry* stop, when he has reasonable suspicion to believe that the person is involved in criminal activity. *Ornelas v. United States*, 517 U.S. 690, 693 (1996); *Terry*, 392 U.S. at 21*; Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002). Reasonable suspicion exists when the officer has specific articulable facts that, combined with the rational inferences from those facts, lead him reasonably to conclude that the person is, has been, or soon will be engaged in criminal activity. *Balentine*, 71 S.W.3d at 768; *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997). This is an objective standard that disregards the actual subjective intent of the officer and instead looks to the totality of the circumstances and focuses on whether there was an objectively justifiable basis for the detention. *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011).

A traffic violation committed in the presence of an officer authorizes an initial stop. *State v. Daniel*, 446 S.W.3d 809, 813 (Tex. App.—San Antonio 2014, no pet.) (citing *Walter v. State*, 28 S.W.3d 538, 542 (Tex. Crim. App. 2000)). In determining whether the initial stop was justified, the proper inquiry "is not whether [the defendant] was guilty of the traffic offense but whether the [officer] had a reasonable suspicion that [he] was." *Jaganathan v. State*, 479 S.W.3d 244, 247 (Tex. Crim. App. 2015).

8

Under the second part of the inquiry, the "investigative stop can last no longer than necessary to effect the purpose of the stop." *Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004). The issue is "'whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant.'" *Id.* at 64 (quoting *United States v. Sharpe*, 470 U.S. 675, 685–86 (1985)). If a valid traffic stop evolves into an investigative detention for a drug related offense so that a canine sniff can take place, reasonable suspicion is necessary to prolong the detention. *See Rodriguez v. United States*, 135 S.Ct. 1609, 1614 (2015) (authority for detention of person for traffic violation ends when tasks tied to traffic infraction are, or reasonably should have been, completed). We examine the totality of the circumstances to determine the reasonableness of a temporary detention. *Curtis v. State*, 238 S.W.3d 376, 380–81 (Tex. Crim. App. 2007).

### 2. Analysis

We must first determine whether the detention of Bland was justified at its inception. *See Terry*, 392 U.S. at 19–20. The trial court concluded "[Bland] did not commit a traffic violation as a matter of law[,]" and, therefore, "[Bland's] stop and subsequent detention were unreasonable." The State concedes that the "sole justification for the traffic stop was the violation of [Texas Transportation Code section 544.010]", but maintains "[t]he trial court's interpretation of the statute is in error." The State maintains that "the statute requires stopping before entering the intersection."

The requirements of the Texas Transportation Code for a vehicle operator approaching a stop sign vary depending on the circumstances: (1) if a crosswalk exists,

9

the driver shall stop before entering the crosswalk; (2) if there is no crosswalk, the driver shall stop at a clearly marked stop line; (3) if there is no stop line, the driver shall stop "at the place nearest the intersecting roadway where the operator has a view of approaching traffic on the intersecting roadway." *State v. Police*, 377 S.W.3d 33, 37 (Tex. App.—Waco 2012, no pet.) (quoting TEX. TRANSP. CODE ANN. § 544.010(c)); *see also Gaona v. State*, No. 13-14-00083-CR, 2015 WL 4035048, at *2 (Tex. App.—Corpus Christi Feb. 19, 2015, pet. ref'd) (mem. op., not designated for publication).

The trial court found that "[t]here [was] no clearly marked stop line or crosswalk at the intersection" and concluded that Bland was required to stop "at the place nearest the intersecting roadway where the operator has a view of approaching traffic on the intersecting roadway." *See* TEX. TRANSP. CODE ANN. § 544.010(c). The trial court's conclusion of law is taken verbatim from section 544.010. *See id.*

Further, the trial court found that Bland's vehicle was "not in the intersection" when it came to a stop. We must give almost total deference to the trial court's findings of historical fact when supported by the record. *See Amador*, 221 S.W.3d at 673. The trial court's finding was supported by Officer Paine's testimony describing the purported violation: "When the vehicle approached the intersection, *stopped for the stop sign*, stopped and pulled into the intersection, and the front of the vehicle was actually out into the intersection." (Emphasis added.). Based on this testimony, the trial court could have reasonably found that Bland stopped his vehicle prior to entering the intersection.

We review de novo the trial court's conclusion that Officer Paine lacked reasonable suspicion to stop Bland's vehicle. *See Wade*, 422 S.W.3d at 668. In doing so, we

10

disregard the subjective intent of the officer, and instead focus on whether there was an objectively justifiable basis for the detention. *Derichsweiler*, 348 S.W.3d at 914. We conclude there was no objectively justifiable basis for Bland's detention. By stopping prior to entering the intersection, Bland complied with section 544.010's requirement that, in the absence of a crosswalk or stop line, the driver shall stop "at the place nearest the intersecting roadway where the operator has a view of approaching traffic on the intersecting roadway." TEX. TRANSP. CODE ANN. § 544.010(c); *see Police*, 377 S.W.3d at 38 (concluding there was no traffic violation justifying the traffic stop under section 544.010(c) where the trial court found that the defendant came to a complete stop at a point past the stop sign but not in the intersection). Therefore, we disagree with the State's contention that the trial court interpreted the statute incorrectly.

The State argues, alternatively, that a traffic stop based on an officer's mistake of law is justified, so long as the mistake of law was reasonable. The State relies primarily on *Heien v. North Carolina*, 135 S.Ct. 530 (2014). In *Heien*, the United States Supreme Court concluded that the officer's "objectively reasonable" but ultimately incorrect view of the traffic code did not invalidate a subsequent search of the defendant's vehicle. *Id.* at 540. The Court explained that "[t]he Fourth Amendment tolerates only *reasonable* mistakes, and those mistakes—whether of fact or of law—must be *objectively* reasonable." *Id.* at 539 (emphasis in original).

Prior to *Heien*, the Texas Court of Criminal Appeals held that "an officer's mistake about the legal significance of facts, even if made in good faith, cannot provide probable cause or reasonable suspicion." *Abney v. State*, 394 S.W.3d 542, 550 (Tex. Crim. App.

11

2013); *see also Robinson v. State*, 377 S.W.3d 712, 722 (Tex. Crim. App. 2012) ("Only the judge is authorized to determine the legal significance of the material facts in the case and how they affect the ultimate conclusion regarding the existence, *vel non*, of probable cause or reasonable suspicion."). We must consider the application of *Heien* in light of Texas's exclusionary rule, which is broader than its federal counterpart. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (West, Westlaw through 2015 R.S.) ("No evidence obtained . . . in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case."); *State v. Tercero,* 467 S.W.3d 1, 10 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd).

The Court of Criminal Appeals has recognized that exceptions to the federal exclusionary rule are only applicable to the Texas rule if they are consistent with the plain language of article 38.23. *See Wehrenberg v. State,* 416 S.W.3d 458, 473 (Tex. Crim. App. 2013) (adopting federal independent source exception); *State v. Daugherty,* 931 S.W.2d 268, 270 (Tex. Crim. App. 1996) (declining to adopt the federal inevitable discovery exception). The Court of Criminal Appeals has yet to address *Heien's* application, and we note that our sister courts have reached different conclusions on this issue. *Compare Tercero,* 467 S.W.3d at 10 (declining to apply *Heien's* "reasonable mistake of law" exception to mandatory blood draw procedure because it was "inconsistent with the text of article 38.23") *with State v. Varley*, No. 02-15-00076-CR, 2016 WL 4540491, at *7 (Tex. App.—Fort Worth Aug. 31, 2016, no pet. h.) (mem. op., not designated for publication) (applying *Heien* in holding that the officer's mistake of law

12

was reasonable while noting that *Heien* "represents a departure from established jurisprudence").

However, even if *Heien* generally applies in Texas, it would have no effect on the outcome of this case. The trial court found that Bland stopped his vehicle "past the stop sign but not in the intersection." By Officer Paine's own understanding of the law—that a vehicle must stop prior to entering the intersection—Bland did not violate the statute.

Officer Paine did not have reasonable suspicion that Bland committed a traffic violation. Therefore, the detention of Bland was unreasonable. *See Jaganathan*, 479 S.W.3d at 247. We overrule the State's issues three through five.

## C.      Canine's Free-Air Sniff of Vehicle

By issue six, the State argues the trial court erred when it "based its entire ruling on the question of whether there was a reasonable suspicion for the stop of [Bland's] vehicle [because it] did not . . . address the legality of the free air sniff of [Bland's] vehicle or the subsequent search of the vehicle which found the contraband narcotics." The State contends: (1) Officer Gibbs's canine partner was with her at the time of the initial stop of the vehicle; (2) Officer Gibbs conducted the free air sniff approximately seven minutes after initiating the traffic stop; (3) the traffic stop was not complete at the time she conducted the free air sniff because she still needed to run Bland's name and vehicle plates for possible warrants; and (4) Officer Gibbs did not unduly prolong the traffic stop by conducting the free air sniff. In the alternative, the State contends the free air sniff was still lawful because Officer Gibbs had obtained reasonable suspicion that Bland's vehicle contained contraband prior to initiating the free air sniff.

13

### 1. Applicable Law

If a valid traffic stop evolves into an investigative detention for a drug-related offense, the officer must act to confirm or dispel his suspicions quickly. *See Matthews v. State*, 431 S.W.3d 596, 603 (Tex. Crim. App. 2014). One method of doing so is to have a trained narcotics-detection dog perform an "open-air sniff" of the air around the exterior of a detainee's car. *Id.* If the dog "alerts" to apparent evidence of contraband, the officer has probable cause to conduct a warrantless search of the car. *See id.* at 603–04; *Harrison v. State*, 7 S.W.3d 309, 311 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd).

If the initial detention is not based on reasonable suspicion, the detention is unreasonable and violates the Fourth Amendment. *Davis*, 947 S.W.2d at 242. Under the "fruit of the poisonous tree" doctrine, evidence may not be used against a criminal defendant if it was obtained by exploitation of an illegal search or seizure and not by means sufficiently distinguishable to be purged of the primary taint. *Wong Sun v. United States*, 371 U.S. 471, 484 (1963); *Thornton v. State*, 145 S.W.3d 228, 232 (Tex. Crim. App. 2004); *see also* TEX. CODE CRIM. PROC. art. 38.23(a). An unreasonable detention renders any subsequently discovered evidence inadmissible as "fruit of the poisonous tree." *Sieffert v. State*, 290 S.W.3d 478, 488 (Tex. App.—Amarillo 2009, no pet.) (citing *Segura v. United States*, 468 U.S. 796, 804 (1984)).

### 2. Analysis

As noted above, the traffic stop was not supported by reasonable suspicion. Accordingly, the detention was unreasonable. *See Davis*, 947 S.W.2d at 242.

14

Therefore, any evidence obtained as a result of the subsequent free air sniff of Bland's vehicle is inadmissible as "fruit of the poisonous tree." *See Sieffert*, 290 S.W.3d at 488; *see also* TEX. CODE CRIM. PROC. ANN. art. 38.23(a).

We overrule the State's sixth issue.

### III. CONCLUSION

We affirm the trial court's judgment.

GREGORY T. PERKES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
13th day of October, 2016.